

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| vs. | § | CRIMINAL ACTION NO.: 5:18-00426-MGL |
| | § | |
| MARVIN LEROY SMITH, JR.-CAPERS, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR COVID RELIEF
AND MOTION FOR COMPASSIONATE RELEASE**

## I.    INTRODUCTION

Pending before the Court are Defendant Marvin Leroy Smith, Jr.-Capers's (Smith-Capers) pro se motion for COVID relief and pro se motion for compassionate release.  The Court will construe them both as having been filed under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i).  Having carefully considered the motions, the response, the record, and the applicable law, it is the judgment of the Court both motions will be denied.

## II.    FACTUAL AND PROCEDURAL HISTORY

Smith-Capers pled guilty to arson in violation of 18 U.S.C. § 844(i).  The Court sentenced him to ninety-two months of imprisonment, followed by three years of supervised release.  It also imposed $716,525.81 in restitution.  Smith-Capers is currently housed at Federal Correctional Institution, Hazelton (FCI Hazelton), with a projected release date of March 18, 2026.

Smith-Capers sustained injuries from a car accident fleeing law enforcement after he committed the crime of conviction. After officers activated their blue lights and sirens, Smith-Capers accelerated and fled. The officers ultimately discontinued the pursuit for their safety and the safety of the public. Smith-Capers eventually crashed and was ejected from the vehicle, after which officers found him lying in a ditch.

As a result, Smith-Capers suffered broken bones in his neck, multiple rib fractures, lower spinal fractures, and a hand injury. Although Smith-Capers remained in the hospital for four days after the accident, he was discharged without the need for surgery. In fact, his medical records show his recovery plan focused on pain management.

He also alleges he suffers from high blood pressure and post-traumatic stress disorder (PTSD) arising from the accident, although he fails to submit any records to support that assertion.

While incarcerated, Smith-Capers has participated in rehabilitative programming offered by the Bureau of Prisons (BOP), such as earning his GED and participating in leadership classes and money management programs. Moreover, he states upon release, he would live with his wife and children and work at a laundromat or a tire shop.

After Smith-Capers filed his motion for COVID relief, the Court ordered he submit documentation showing he had exhausted his administrative remedies. In response, he filed his motion for compassionate release. He attached to that motion a request to the warden of his facility.

Thereafter, the government responded. Smith-Capers neglected to file any reply. The Court, having been fully briefed on the relevant issues, will now adjudicate the motions.

## III.   STANDARD OF REVIEW

Upon a defendant's motion, the Court may reduce a term of imprisonment if the defendant has exhausted his administrative remedies and "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A)(i), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185-86 (4th Cir. 2021). First, the Court determines whether "extraordinary and compelling reasons" exist to support a sentence reduction. *Id.* at 185 (quoting § 3582(c)(1)(A)(i)).

Second, the Court considers whether "a [sentence] reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Because there is "as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), . . . district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

Finally, even if the Court finds extraordinary and compelling reasons to support relief, it retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. *High*, 997 F.3d at 186.

## IV.   DISCUSSION AND ANALYSIS

As an initial matter, as the Court noted above, defendants must generally exhaust their administrative remedies prior to bringing a motion for compassionate release with the Court. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining a defendant may bring a motion for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of

Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").

The government, however, failed to address this issue in its response. It appears that the government concedes that Smith-Capers properly exhausted his administrative remedies.

Nevertheless, to the extent Smith-Capers failed to properly and fully exhaust his administrative remedies as to either motion, the Court deems the argument waived. *See United States v. Muhammad,* 16 F.4th 126, 130 (4th Cir. 2021) ("Section 3582(c)(1)(A) is a non-jurisdictional claims-processing rule and, therefore, may be waived." (internal quotation marks omitted) (internal citation omitted)).

Next, Smith-Capers's compassionate release motion appears to ask for a transfer to another facility. The Court will refrain from considering that request, as such a decision is within the purview of the BOP. *See* 18 U.S.C § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]").

Additionally, both of Smith-Capers's motions ask the Court to reduce his sentence, although the COVID relief motion asks for a six-to-twelve-month reduction and the compassionate release motion for requests immediate release.

Because the motions contain overlapping arguments as to the reduction of his sentence, the Court will consider them as one in its discussion below. It will first determine whether extraordinary and compelling reasons warrant a reduction in Smith-Capers's sentence, and if so, the extent of reduction that is warranted.

A.    ***Whether Smith-Capers presents extraordinary and compelling reasons warranting a reduction of his sentence under 18 U.S.C. § 3582(c)***

First, Smith-Capers contends the COVID-19 pandemic creates extraordinary and compelling reasons for a reduction in his sentence.

4

But, "for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021). Inoculation greatly reduces the likelihood of severe illness and death from COVID-19.

Moreover, there are currently no active cases at FCI Hazelton. *See* BOP COVID-19 Statistics, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited July 6, 2023) (of which the Court takes judicial notice). Even considering the close quarters inherent in prison, the Court identifies no particularized risk to Smith-Capers based on his placement at FCI Hazelton.

And, even if any medical conditions elevate Smith-Capers's risk for COVID-19 infection, he has neglected to show the vaccine would fail to mitigate any particular susceptibility to serious illness or death from contracting the virus. *See United States v. Hargrove*, 30 F.4th 189, 198 (4th Cir. 2022) (holding district court exercised proper discretion by denying compassionate release because, under the totality of the circumstances, defendant's health conditions, which might cause increased risk of serious illness or death from COVID-19, failed to present extraordinary or compelling reasons). Indeed, he has recovered twice after contracting COVID-19.

Altogether, although the risk of an inmate contracting COVID-19 and suffering adverse health consequences is certainly still present, it has been greatly reduced by BOP's efforts and the prevalence of the vaccine. Therefore, COVID-19, its effects, and the BOP's handling of the risks fail to rise to the level of extraordinary and compelling reasons.

Second, Smith-Capers asserts his medical conditions, including his injuries from the car accident, his high blood pressure, and his need for physical therapy, constitute extraordinary and

compelling reasons for his release. This is the only argument the government directly addresses in its response.

Nothing in his medical records indicates Smith-Capers's injuries from the accident were more severe than his doctors initially determined. As discussed above, doctors refrained from recommending surgery, instead focusing on common pain management. Even if Smith-Capers suffers lingering pain caused by the accident, he neglected to describe ailments sufficient to constitute extraordinary and compelling reasons. And, the Court was aware of his injuries at sentencing.

Moreover, as mentioned above, even if Smith-Capers had presented evidence of high blood pressure, that, without more, fails to rise to the level of extraordinary and compelling reasons.

Relatedly, Smith-Capers asserts FCI Hazelton has neglected to provide physical therapy. Although the Court is troubled by any allegation that a BOP facility has failed to meet medical needs, it can do little without additional evidence and explanation. Based on the medical records, it is unclear to the Court whether Smith-Capers requires ongoing physical therapy.

With this bare claim, the Court determines Smith-Capers has failed to show extraordinary and compelling reasons at this time. But, depending on their nature and severity, inhumane conditions due to lack of medical care may give rise to a civil claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for constitutional violations.

Third, Smith-Capers alleges he suffers from PTSD, which prevents him from remaining focused on short tasks and programs. As the Court mentioned above, Smith-Capers has failed to present evidence of a formal PTSD diagnosis. More importantly, the Court is unpersuaded that an inability to concentrate—the PTSD symptom he complains of—constitutes extraordinary and compelling reasons for a reduction in his sentence.

Finally, Smith-Capers posits FCI Hazelton's lack of rehabilitative programs will hinder his smooth reentry into society upon release. The Court acknowledges the reality that programming was reduced due to COVID-19. This is an important, troubling issue, because a lack of programming interferes with the rehabilitative goals of sentencing, even if the pandemic rendered such measures necessary.

But, to the extent such programs were temporarily unavailable, it appears FCI Hazelton has reintroduced them. Indeed, as discussed above, Smith-Capers has participated in several rehabilitative courses. Thus, Smith-Capers has neglected to present extraordinary and compelling reasons as to this ground, as well.

In sum, Smith-Capers has failed to present extraordinary or compelling reasons for a sentence reduction of any amount.

### B. Whether the Section 3553(a) factors weigh in favor of a reduction of sentence

Even if the Court determined extraordinary and compelling reasons exist in this case, however, analysis of the Section 3553(a) factors would preclude reducing Smith-Capers's sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (the Court may grant compassionate release only "after considering the factors set forth in section 3553(a) to the extent that they are applicable[.]"). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) "the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes by the defendant;
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense] . . .[;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Smith-Capers pled guilty to arson, a serious offense. The Court held him accountable for more than seven hundred thousand dollars in property damages that destroyed three businesses. What is more, as discussed above, he also fled from law enforcement after the commission of the offense, showing a reckless disregard for others' safety.

Moreover, his lengthy criminal history, which includes several instances of burglary— including second-degree violent burglary and third-degree burglary—breaking into a motor vehicle, possession of a stolen vehicle, larceny by trick, and receiving stolen goods, resulted in the Court assigning a criminal history category of VI, the highest level, at sentencing.

Both the instant offense and his criminal history indicate Smith-Capers remains a danger to the public.

And, although the Court commends Smith-Capers on his efforts toward rehabilitation, he has neglected to do more than what the Court hopes of every defendant. Such strides fail to warrant a sentence reduction. The Court nevertheless encourages Smith-Capers to continue to take part in programming the BOP has to offer. Similarly, although the Court is pleased Smith-Capers has a release plan, that fails to change the balance of the factors.

Overall, Smith-Capers's ninety-two-month sentence is not of an "unusual length" creating a "gross disparity[.]" *McCoy*, 981 F.3d at 285 (internal quotation omitted).

Considering the balance of the factors, therefore, the Court determines a reduced sentence is inappropriate. Smith-Capers's current sentence is sufficient, but no longer than necessary, to

promote respect for the law, provide adequate deterrence, reflect the seriousness of his offense, and is a just punishment in this case.  The Court will therefore refrain from reducing Smith-Capers's sentence and deny his motions.

## V.    CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Smith-Capers's motion for COVID relief, ECF No. 66, and motion for compassionate release, ECF No. 70, are **DENIED**.

**IT IS SO ORDERED.**

Signed this 6th day of July 2023, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE